Plaintiff: Thomas Robert Murphy

920 L Street

Springfield, OR 97477

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

Thomas Robert Murphy

    Plaintiff,

<u>CIVIL COMPLAINT</u>

    v.

    Hon._____

Civil Action No. 6:20-CV-117-MC

Lane County,

    Defendant.

### INTRODUCTION

Plaintiff was arrested on April 29th 2014 and taken to Lane County Jail [Lane County Corrections Division a subdivision of the Lane County Administrator]. Plaintiff

was housed in solitary confinement for a total of eight months. At approximately two weeks the court ordered removal of the Plaintiff to the Oregon State Hospital for a competency evaluation; the results of which found the Plaintiff competent to stand trial but alleged the Plaintiff as a mentally ill person and diagnosed him with schizophrenia. Plaintiff was initially held in solitary confinement prior to his removal and upon return from the Oregon State Hospital was returned to solitary confinement for the remainder of his stay.

Plaintiff asked the Lane County Jail staff numerous times if he could be removed from solitary confinement after such a time had passed [Plaintiff will show he had no disciplinary write-ups or infractions during the eight month period], but was told that because of the nature of the allegations against him, a "violent crime" or "Measure 11" allegation, that the Lane County Jail has a policy of restricting such pretrial detainees to solitary confinement. This was evidenced as many other similarly situated persons were also housed in solitary confinement due to no fault of their own, by Jail Policy, pursuant to the nature of the allegations against them.

Plaintiff was held in solitary confinement as a pretrial detainee for a total of approximately eight months from April 29th 2014 thru February 16th 2015 [minus a 60

day stay at the Oregon State Hospital]. Plaintiff was never written up for bad behavior but was only held subject to a jail "Policy" during this period of time.

Research shows that such social and environmental deprivations are toxic to the human brain. It has been evidenced that solitary confinement causes stupor and delirium [Stuart Grassian, *Psychiatric Effects of Solitary Confinement*, 22 Wash. U. J. L. & Pol'y 325, 348 (2006)]. The National Institute for Mental Health has evidenced solitary confinement causes trauma and P.T.S.D.

Instead of promoting public safety, these conditions cause inmates to spiral into mental illness before they are brought to trial or released to the community. Courts, advocates, and prison administrators across the county are recognizing the costs of excess isolation per a public trust that exists pursuant to constitutional standards of decency. Plaintiff brings forth this Civil Complaint alleging the Defendant violated his Constitutional Rights and caused him undue duress, pain, suffering, and mental anguish, and say:

## JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(1) and (4). Plaintiff brings claims under 42 U.S.C. § 1983 for the deprivation of rights

secured by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

2. Venue is proper in this Court under 28 U.S.C. § 1391 (c)(2) because the events giving rise to the claims occurred in this judicial district and the parties reside in this district.

3. Noting that, pertaining to any statute of limitations, a Bivens and/or 1983 Action begins to accrue "when the Plaintiff knows or has reason to know of his injury…"[Dixon v. Clem, 492 F.3d, 665, 671 (6th Cir. 2007) (noting that federal law governs the question of when the relevant limitations period begins to run)]. The Plaintiff does not make complaint or contend the arrest and subsequent imprisonment in this complaint; but only brings forth this complaint pertaining to his treatment while in custody, and attests hereby, to this court, that he is only now becoming aware of the illegality and deprivations to his rights he suffered therein.

## PARTIES

4. Plaintiff, Thomas Murphy, was housed in Lane County Jail [Lane County Corrections Division] located at 105 W 5th Ave, Eugene, OR 97401 from April 2017 thru February 2018.

5. Plaintiff was a resident of Lane County Oregon at the time of his arrest residing at the time at 920 L Street, Springfield, Oregon 97477.

6. Plaintiff is currently a resident of Lane County Oregon, and currently resides at 920 L Street, Springfield, OR 97477.

7. Defendants "Lane County Administrator" is a body politic with a principal business address at Lane County Administrator 125 E 8th Ave Eugene, OR 97401, with its subdivision responsible for the Jail, "Lane County Corrections Division," located at 101 W 5th Ave, Eugene, OR 97401.

8. I certify here that I have sent both parties included in this civil complaint a summons notice by certified mail which includes a signature and tracking number. I, the Plaintiff, have no person at this time who has expressed willingness to personally serve the summons on my behalf.

## FACTUAL ALLEGATIONS

9. Plaintiff was initially arrested on April 29th, 2014, and taken into custody and placed at the Lane County Jail.

10. After about two weeks he was removed to the Oregon State Hospital to undergo a court ordered competency evaluation in which he was housed at the Oregon State Hospital in Salem, Oregon, for 60 days.

11. Plaintiff was found competent to stand trial and was returned to the Lane County Jail after 60 days.

12. Plaintiff was diagnosed with schizophrenia during his 60 day stay at the Oregon State Hospital.

13. Once the Plaintiff returned to the Lane County Jail he was again returned to solitary confinement for the remainder of approximately eight months.

14. The cells for solitary confinement at Lane County Jail are about the size of a parking space, fit with a bed, a table, but no chair.

15. Plaintiff, for a total of approximately eight months in solitary confinement, was only released from his cell for a total of 45 minutes a day to shower, clip his nails, shave, and to use the phone.

16. Plaintiff suffered lack of attorney access as this was his only time to use the phone and only two inmates were allowed out at once; much of the time it would be to early (as early as 4AM) to reach his attorney or to late to reach his attorney (as late as 8PM).

17. Plaintiff suffered from the constant day and night blaring of the T.V. that was on high volume most every day, day and night, in the day room.

18. Unlike inmates in the general population, inmates in solitary confinement are never allowed to: eat meals away from their toilets; attend religious services [in violation of the Religious Land Use Institutionalized Persons Act, or RLUIPA];

participate in groups or programs designed to educate or rehabilitate them; access the law library to research their cases; or go outside for exercise, recreation, and their overall well-being, meaning Plaintiff, Thomas Robert Murphy, had not been exposed to fresh air for eight months; and lacked the ability to go outside or even walk in one direction for more than the length of his cell.

19. Solitary confinement creates or exacerbates serious mental health problems and anti-social behavior, and leads to an increased rate of recidivism after release [Vera Institute of Justice Safe Alternatives to Segregation Initiative, *Request for Proposals for Technical Assistance Sites*:http://www.vera.org/project/safe-alternatives-segregation-initiative].

20. Solitary confinement lasting more than 10 days results in a distinct set of emotional, cognitive, social, and physical pathologies.

21. Because solitary confinement deprives the subject of social and environmental stimulation, it is "toxic to brain functioning and causes symptoms characteristic of stupor and delirium" [Stuart Grassian, *Psychiatric Effects of Solitary Confinement*, 22 Wash. U. J. L. & Pol'y 325, 348 (2006)].

22. While there is a wealth of research on the subject, some neurological effects that are readily documented may include perceptual distortions, illusions, and hallucinations; panic attack; difficulties with thinking, concentration, and memory;

frightening and uncontrollable fantasies, such as those involving revenge, torture, or mutilation; paranoid and persecutory delusions; and problems with impulse control.

23. The motor effects of those subject to solitary confinement range from a state of restlessness, yelling, and banging at one end of the spectrum to a kind of regressed, dissociated, withdrawn, hypnoid state at the other.

24. Suicide rates and incidents of self-mutilation (such as banging one's head against the cell wall) are much higher for people in segregation than those in the general prison population.

25. These types of conditions may cause prolonged or permanent psychiatric disability, including impairments which destroy the inmate's capacity to reintegrate into the community upon release or to effectively partake in the litigation against him such as communicating with his attorney.

26. The Association of State Correctional Administrators has now recognized solitary confinement as a "grave problem." [George Camp et al., New Report of Prisoners in Administrative Segregation Prepared by the Association of State Correctional Administrators and the Arthur Liman Public Interest Program at Yale Law School, http://www.asca.net/system/assests/attachments/8895/ASCA%20Press%Release%208_28_15.pdf?1441222595].

27. Justice Kennedy of the United States Supreme Court recently called on the Judiciary to examine the practice of confining an inmate to near-total isolation for an extended period of time [Davis v. Ayala, 135 Ct. 2187, 2210(2015) (Kennedy, J., concurring)].

28. President Obama recently directed the Attorney General to review the overuse of solitary confinement across American prisons [https://www.whitehouse.gov/the-press-office/2015/07/14/remarks-president-naacp-conference].

29. The American Bar Association now recommends that "segregated housing should be for the briefest term and under the least restrictive conditions practicable and consistent with the rationale for placement and with the progress achieved by the prisoner [ABA, *Standards for Criminal Justice: Treatment of Prisoners* 50, Standard 23-2.6 (Rationales for segregated housing) (3d. ed. 2011)].

30. The Committee against Torture advocates a "ban on solitary confinement regimes in prisons." [U.N. Comm. against Torture, *Concluding Observations on the Combined Third to Fifth Periodic Reports of the United States of America* 20, U.N. Doc. CAT/C/USA/CO/3-5 (Dec. 19, 2014)].

## CAUSES OF ACTION

## Count I

## Punishment in Violation of Due Process under the

## Fourteenth Amendment to the United States Constitution

31. The above facts are incorporated by reference here as if set forth at length.

32. In the context of prisons, the United States Constitution looks beyond historical conceptions to the evolving standards of decency that mark the progress of a maturing society.

33. In light of the fact that Plaintiff was a pretrial detainee and for his approximate eight month incarceration had committed no disciplinary action; the conditions in Lane County Jail [solitary confinement] are overly harsh and not evidenced as necessary and are brought about by "Policy" only [are not reasonably related to legitimate purpose].

34. These conditions caused the Plaintiff deprivations and hardships over an extended period of time and are excessive in relation to the purposes assigned to them [typically only inmates who have committed some infraction such as insolence, fighting, etc., are put into solitary confinement].

35. Therefore, the conditions in solitary confinement constitute punishment of the Plaintiff, a Pretrial Detainee, in violation of the Due Process Clause of the Fourteenth Amendment.

## Count II

### Cruel and Unusual Punishment in Violation of the

### Eighth Amendment to the United States Constitution

36. The above facts are incorporated by reference here as if set forth at length.

37. The United States Constitution requires the government to respect the human attributes even of those who have been alleged to have committed a crime or have been convicted of serious crimes.

38. The Eighth Amendment's scope must change as the basic mores of society change.

39. The conditions of solitary confinement that the Plaintiff suffered lacked the minimal necessities of civilized life and caused profound and obvious psychological pain and suffering. This suffering is unnecessary and wanton; and contrary to the funding that Lane County Jail receives as a subdivision of the Lane County Administrator to rehabilitate and make ready inmates for future release into the community and to provide them with the basic necessities to work their case, partake in religious services, and communicate with their attorney.

40. Under these circumstances, Defendant knows of and disregards an excessive risk to inmate health.

41. Therefore, the conditions in Lane County Jail, solitary confinement, inflicted an avoidable cruel and unusual punishment on the Plaintiff who was a non-sentenced, not convicted, pretrial inmate in violation of the Eighth Amendment.

## Count III

### Restriction on the Right to Access to the Courts

### in Violation of Due Process under the

### Fourteenth Amendment to the United States Constitution

42. The above facts are incorporated by reference here as if set forth at length.

43. The Constitution guarantees inmates a right of access to the courts. This right applies to both criminal proceedings and civil proceedings in which an inmate is challenging the conditions of his confinement.

44. The Plaintiff was kept in solitary confinement for eight months, due to no fault of his own, pursuant to a jail "Policy" and was not allowed for this time to access a legal library and was duressed in his ability to either receive a call from his attorney or to make a call to his attorney or to research his case.

45. During this eight month period in solitary confinement, Plaintiff had no access to a legal library of any kind.

46. Therefore, Plaintiff was subjected to restrictions that impaired his right of access to the courts, due to no fault of his own, in violation of the Fourteenth Amendment.

## Count IV

### Jail "Policy" Caused Prolong Solitary Confinement in Violation of the Equal Protection Clause under the Fourteenth Amendment to the United States Constitution

47. The above facts are incorporated by reference here as if set forth at length.

48. The clause, which took effect in 1868, provides, "nor shall any State [...] deny to any person within its jurisdiction the *equal protection* of the laws".

49. Plaintiff was invidiously discriminated against pursuant to the allegations against him [Plaintiff was told several times because he was alleged of a "violent crime" he would remain in solitary confinement for the length of his [pretrial] incarceration.

50. Therefore, Plaintiff was wrongly discriminated against pursuant to an unusual jail "Policy" to incarcerate alleged violent offenders, even if pretrial, in violation of the Equal Protection Clause of the Fourteenth Amendment.

## Count V

### Use of Solitary Confinement Caused Undue Duress and Violation of the Plaintiff's Fifth Amendment Right Against Self Incrimination.

51. The above facts are incorporated by reference here as if set forth at length.

52. The constitution guarantees any defendant the Right Against Self Incrimination.

53. The Plaintiff [then a defendant in a criminal case] was so wrongly duressed during the pretrial phase, and being told he would remain in solitary confinement until his case was settled, at which time he understood he would be removed to a State facility in which he would have regular, unfettered access to a yard, rehabilitative programs, a legal library, a radio, a T.V. in his cell, etc.]; that

54. Therefore, Plaintiff suffered undue duress pursuant to an uncommon and rare jail policy to continue solitary confinement against individuals who are alleged to have committed a "violent crime" causing ill-gotten, ill-gained leverage during the pretrial and plea agreement phase; and was induced and duressed by threat of

continuation of solitary confinement (a severe type of punishment usually reserved for inmates who have committed some in jail offense) into a plea deal that Plaintiff would have otherwise not made [Plaintiff's attorney, John Bennington, told the Plaintiff it could be up to 2-4 years to see a jury trial pursuant to hiring an investigator, interviewing witnesses, collecting numerous documents and medical reports, building a case, etc.] in violation of Plaintiff's Fifth Amendment Right Against Self Incrimination.

## PRAYER FOR RELIEF

*Wherefore,* Plaintiff, Thomas Robert Murphy, individually, asks the Court to:

A. Allow Plaintiff to bring forth this civil complaint pro se. Plaintiff has been in court several times before and is aware of required court demeanor and processes.

B. Retain jurisdiction of this case.

C. Plaintiff requests In Forma Pauperis status [see attached application].

D. Asks for a JURY TRIAL.

E. Plaintiff does not consent to the use of a Magistrate Judge.

F. Award costs pursuant to the above mentioned constitutional violations and their affect on the Plaintiff [documented above] including wrongful conviction

pursuant to an undue duress caused during the pretrial phase, improper housing in solitary confinement, improper classification do to jail "Policy", undue pain and suffering, mental anguish, and damage to his reputation.

G. Plaintiff is not asking this court at this time to vacate or otherwise overturn any conviction or previous court ruling; Plaintiff is only asking this court to allow him to present such civil complaint to a jury to decide if his rights pursuant to Counts 1-5 were violated or not; to have a finding and ruling on each Count; and to award a monetary amount (to be determined at a later time).

H. Award all costs incurred to Plaintiff during the litigation of this case.

I. Award any other relief the Court deems necessary and just pursuant to 28 U.S.C. § 2202.

J. Please construe liberally and infer for this pro se plaintiff.


## LOCAL CIVIL RULE 11.2 CERTIFICATION


The Plaintiff believes to the best of his knowledge that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding, but gives to the Court these two active and unsettled cases for its review.

1. In the United States District Court for the District of Oregon: 6:19-cr-00530-AA, pursuant to an arrest made on Feb. 16th, 2018, for Threats Against the President and Successors to the Presidency & Interstate Trafficking to Communicate a Threat, in violation of [18 U.S.C. 817(a) & 18 U.S.C. 873(c)].

2. In the United States District Court for the District of Oregon: 6:19-cv-01124-HZ, a civil complaint [Bivens Action] pertaining to the above case in which the Plaintiff alleges wrongful search and seizure of his online social media account. Currently, the Plaintiff is on Pretrial Release pursuant to a Court Order made on Dec. 18th, 2019, and he lives at home. This case currently has a Stay Order on it pending the resolution of the criminal allegations. Plaintiff was granted In Forma Pauperis status in this civil case.

3. Plaintiff has sent by certified mail a copy of this document along with the Summons Notification to the Defendants at: Lane County Administrator 125 E 8th Ave, Eugene, OR 97401, and to co-defendant Lane County Corrections Division, 101 W 5th Ave, Eugene, OR 97401 [see attached copy of Summons for the Court's reference].

Sincerely,

Thomas Robert Murphy

920 L Street

Springfield, OR 97477

thenotepadalien@gmail.com

541-505-7695

Signed _____ January 16th, 2020.